IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TEDDY BARNES                                                                                         PLAINTIFF

V.                                              NO. 09-5254

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Teddy Barnes, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background:**

Plaintiff filed his current applications for DIB and SSI on July 11, 2007, alleging an inability to work since May 29, 2007, due to diabetes neuropathy, dizziness, pain in his knee and back, and anxiety. (Tr. 60, 119-125, 130). For DIB purposes, Plaintiff maintained insured status through December 31, 2011. An administrative hearing was held on November 12, 2008, at which Plaintiff and a vocational expert (VE) appeared and testified. (Tr. 8-52).

By written decision dated March 16, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment that was severe - diabetes mellitus. (Tr. 62). However, after

reviewing all of the evidence presented, she determined that Plaintiff's impairment did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 63). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform:

> light work except that while the Plaintiff can frequently lift and/or carry ten pounds, and occasionally twenty five pounds, sit (with normal breaks) for a total of six hours in an eight hour work day, and stand and/or walk (with normal breaks) for a total of six hours in an eight hour work day, he can only frequently handle and finger objects or push and/or pull with his upper extremities.

(Tr. 63). With the help of a VE, the ALJ determined Plaintiff could perform his past relevant work as a liquor store assistant manager and warehouse manager. (Tr. 66).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 25, 2009. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and this case is before the undersigned for disposition. (Tr. 8, 10).

**II. Evidence Presented:**

It is not disputed that Plaintiff has been diagnosed with Diabetes Mellitus, Type II, and on May 30, 2007, Dr. John H. Kendrick, who evaluated Plaintiff for a mass in his right flank, noted that Plaintiff's diabetes was controlled. (Tr. 195, 216-219).

On August 10, 2007, Paul Cherry, Ph.D., completed a Psychiatric Review Technique form and determined that Plaintiff suffered from no medically determinable mental impairment. (Tr. 201). Dr. Cherry concluded that there was no hospitalization, emergency room visits or treatment due to mental problems, and that Plaintiff was not on medication for a mental disorder. (Tr. 213). He also stated that Plaintiff's activities of daily living were not limited due to mental

problems. (Tr. 213).

Also on August 10, 2007, a Case Analysis was completed by Dr. Elva Montoya. (Tr. 215). Dr. Montoya concluded that the medical evidence of record indicated that Plaintiff's diabetes was controlled with diet, there was no decreased visual acuity, no complaints of headaches, his gait was coordinated and smooth, he had good strength in all of his extremities, there was no joint or muscle pain or decreased mobility or swelling, and that he had a large benign lipoma on his right side that was removed without incident. Dr. Montoya concluded that Plaintiff's physical impairment was non-severe. (Tr. 215).

On August 15, 2007, Plaintiff presented himself to Northwest Arkansas Free Health Center, requesting diabetes medications. At that time, he was reported as walking four miles per day, seven days per week. (Tr. 217). On August 16, 2007, Plaintiff presented to Washington Regional Medical Center, where lab results revealed his diabetes was under "poor control" and that he needed medication. (Tr. 218-19).

Plaintiff presented to Northwest Arkansas Free Health Clinic on September 27, 2007, and lab results revealed his blood sugar level was 253. (Tr. 216). Plaintiff's Metformin prescription was then increased from 500 mg. to 1000 mg. b.i.d., and he was started on Glipizide. (Tr. 216).

On November 19, 2007, upon referral, Plaintiff's vision was examined at The Eye Clinic. The tests revealed that Plaintiff had 20/20 uncorrected visual acuity in both eyes. (Tr. 227). On November 27, 2007, Plaintiff presented to Northwest Arkansas Free Health Clinic for follow-up. His blood sugar level was 177, and it was determined that his Glipizide prescription was too low. It was reported that the Eye Center had determined Plaintiff had early glaucoma. Plaintiff was directed to continue on his Metformin and an increased dosage of Glipizide. (Tr. 229).

There are no further medical records indicating Plaintiff received any further medical care for either his diabetes or alleged anxiety or depression after November of 2007.

On December 20, 2007, Jerry R. Henderson and Steve Owens filed reports, stating that they had reviewed all of the evidence in the file and the assessments of August 10, 2007 were affirmed as written. (Tr. 221-222).

In his first disability report dated July 11, 2007, Plaintiff stated that due to his "neuropathy" in his fingers, his hands cramped, and he had limited grip and frequently dropped things. He further stated that he could not walk anymore due to pain, and also had vision problems. (Tr. 130). In a form dated August 9, 2007 - Pain and Other Symptoms - Plaintiff reported that he required two hour naps twice or more a day, that his pain was located in his left shoulder, left knee, left hip, and left ankle, and that he could not stand or walk without pain. (Tr. 143). For pain, Plaintiff was taking only aspirin, because he stated it was all he could afford. However, the record reflects he was able to receive medications from the free health clinic. (Tr. 216, 217, 229).

In his function report dated August 9, 2007, Plaintiff stated that he woke up at 5:30 am, went to bed a 7 or 8 pm, and that during the day, he napped and watched television. (Tr. 145). He denied any problems with personal care, and sometimes helped with the laundry, cleaning and mowing. (Tr. 147). He stated that he went outside every day, drove a car, shopped for groceries and toiletries, and played golf three months earlier . (Tr. 148). He reported that his low back hurt and the pain made him irritable. He then stated that he tried to walk a mile a day. (Tr. 150). He stated that his hands and feet were starting to get numb more often. (Tr. 152).

In an undated disability report - appeal, Plaintiff reported that his blood sugar was

-4-

running very high and that he was on a new medication. His medication was listed as Metformin to control his blood sugar. (Tr. 173, 175). He reported that he was always dizzy and had a hard time getting through the day. (Tr. 176). He stated that he would not drive himself anywhere because of his dizziness and vision, and that he used to play golf but could no longer do so, partly because of the fatigue and vision, "but also because of left shoulder is always in pain." (Tr. 176). He reported that he had no insurance and that the doctor at that time told him he would probably need surgery on his left rotator cuff.

In a January 25, 2008 disability report - appeal, Plaintiff stated that his dizziness and headaches had gotten worse, that he needed eye surgery, but could not afford it. (Tr. 180). At that time, he was taking Lipitor, Lispinril and Metformin. (Tr. 182).

At the November 12, 2008 hearing, Plaintiff stated that if the weather was cold, the pain was worse in his hip, knee and ankle. (Tr. 21). However, Plaintiff admitted that he never discussed this pain with a doctor. (Tr. 21). He also remembered that in August of 2007, he told his doctor that he was trying to walk about four miles a day. (Tr. 22). He testified that he tried to get out and walk about a mile at a time, every day. (Tr. 22).

Plaintiff stated that since he left a construction job in 2007, he has looked for other work, and actually went to Wal-Mart and "probably would have got the job but it was $7.20 an hour. And by the time I figured driving to and fro, I, I'd a made about 120 a week." (Tr. 22). Although Plaintiff stated that he did only a little of the cleaning and laundry, he also admitted that even before he discovered his diabetes, he did very little work around the house. (Tr. 24). Plaintiff testified that in August of 2007 he went to New Orleans, Louisiana, to help his father-in-law pull "some stuff out of the yard and all." (Tr. 27). Plaintiff further testified that his

AO72A
(Rev. 8/82)

anxiety was "not so bad now." (Tr. 28). He stated that he stayed home with his nine year old child, and was able to attend his thirteen year old child's basketball games and walk his fifteen year old onto the field at her ninth grade homecoming. (Tr. 30-31). Although he stated that he had numbness and tingling and pain in his feet and hands, he also stated that the worst pain he had was in his shoulder. (Tr. 33). He stated that he could no longer play golf, that he could dress and groom himself, could stand a couple of hours before having to take a break, walked every day, usually a mile, and had helped build two decks in the previous eight months. (Tr. 36-37). He stated that he was scheduled to help build another deck, but apparently, the person's money fell through. (Tr. 37).

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV. Discussion:**

    **A. Impairments**

The ALJ found that Plaintiff's alleged anxiety and depression were not medically

determinable impairments consistent with Sections 223(d)(3) and 1614(a)(3)(D) of the Act. There is substantial evidence of record to support this conclusion. There are no records indicating Plaintiff sought treatment for complaints of depression or anxiety from any medical source during the relevant time period and he did not complain of such to any treating physician. Nor does he take any medication for depression. In addition, in his Psychiatric Review Technique form, Dr. Cherry concluded that Plaintiff suffered from no medically determinable mental impairment.

### B. Subjective Complaints of Pain

Plaintiff contends that the ALJ ignored the effects of his subjective pain on his ability to perform his past relevant work and that the ALJ failed to discuss the five factors which are required by Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), when analyzing the subjective complaints of pain.

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See id.. While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit Court of Appeals observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated

-8-

Plaintiff's subjective complaints. The ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged neuropathy, pain in his joints and back, dizziness, limited memory, visual impairment, anxiety, and irritability. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 64). The ALJ noted that Plaintiff was able to play golf in May 2007, that Plaintiff considered working at Wal-Mart, but did not accept work there because the $7.20 per hour was not enough to pay for his travel. (Tr. 65). The ALJ noted that Plaintiff's diabetes symptoms were controlled when he was examined in May of 2007, and that Plaintiff received no further medical treatment for his diabetes or pain subsequent to 2007.

Plaintiff stated that he was unable to afford surgery for his eyes. However, there is no evidence showing Plaintiff was denied surgery due to his inability to pay. Furthermore, Plaintiff did not state that he could not work at Wal-Mart because of his impairments, but rather that he decided the $7.20 per hour would not have been worth the trip. Seeking work or working at a job while applying for disability benefits are activities inconsistent with complaints of disabling pain. Dunahoo v. Apfel, 241 F.3d 1033, 1038-39 ( 8th Cir. 2001). There is no indication that Plaintiff's diabetes or pain would have prevented him from functioning at work. Although Plaintiff contends he could not lift more than ten pounds, he was able to build two decks and was hoping to help build another one at the time of the hearing. His daily activities, as more specifically set out above, are clearly not consistent with complaints of disabling pain, and belie Plaintiff's complaints of limitation. The Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disability. See Hutton

v. Apfel, 175 F.3d 651, 654-655 (8th Cir.1999)(holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities-making breakfast, washing dishes and clothes, visiting friends, watching television and driving - were inconsistent with claim of total disability). Furthermore, the record of minimal medical treatment is inconsistent with Plaintiff's subjective complaints. See Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007)(a claimant's subjective allegations may be discredited by evidence they have received minimal medical treatment and/or has taken only occasional pain medications).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subject complaints were not totally credible.

**C. RFC Assessment:**

Plaintiff also contends that the ALJ failed to consider all of the relevant evidence in determining Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." Guilliams v. Barnhart, 393 F.3d 798, 803 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). However, the ALJ bars the primary responsibility for assessing a claimant's RFC based on all relevant evidence. Guilliams, 393 F.3d at 803. Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to

determine how those limitations affect his RFC." Id. Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

In the present case, the ALJ considered all of the medical records when she determined Plaintiff retained the RFC to perform light work with some limitations. Plaintiff's capacity to perform this level of work is supported by Dr. Montoya's analysis, and by the fact that Plaintiff's examining physicians placed no restrictions on his activities that would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999)(lack of physician-imposed restrictions militates against a finding of total disability). In addition, the record reflects that Plaintiff was able to engage in strenuous activities, such as helping to build two decks, assisting his father-in-law in Louisiana clear debris from his yard, and walking four miles a day in August of 2007. The ability to perform such activities supports an RFC for at a minimum, light exertional work.

**D. Fully and Fairly Develop the Record:**

The Court rejects Plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, See Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000)(ALJ only must order consultative examination when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir. 2004)(ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue). Both Dr.

AO72A
(Rev. 8/82)

Cherry and Dr. Elva Montoya found that Plaintiff was not limited due to mental or physical problems, and these decisions were affirmed by Jerry R. Henderson and Steve Owens. In addition, none of the medical records indicate any evidence of mental or physical limitations that are inconsistent with the ALJ's RFC determination.

After reviewing all the evidence of record, the Court finds the ALJ had substantial evidence to support his determination.

## V. Conclusion:

Based on the foregoing, the Court affirms the ALJ's decision and dismisses Plaintiff's case with prejudice.

IT IS SO ORDERED this 3rd day of January, 2011.

/s/ *Erin L. Setser*
 HON. ERIN L. SETSER
 UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)